UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF JOSEPH BENKEL, ADV. FOR THE ASSETS OF THE BANKRUPT, MR. ELIEZER FISHMAN I.D. NO. 030302657 FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782<br><br>　　　　　　Applicant | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF JOSEPH BENKEL, ADV. (the "Trustee") FOR THE ASSETS OF THE BANKRUPT, MR. ELIEZER FISHMAN I.D. NO. 030302657(the "Bankrupt") FOR AN ORDER <u>TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

TROUTMAN PEPPER<br>
HAMILTON SANDERS LLP<br>
875 Third Avenue<br>
New York, New York 10022<br>
Tel.: +1 212 704-6000<br>
Attorneys for Applicant

## TABLE OF CONTENTS

                                                                              **Page**

PRELIMINARY STATEMENT ............................................................................................... 1
RELEVANT BACKGROUND .............................................................................................. 2
      Eliezer Fishman ............................................................................................................ 3
      Mr. Fishman's Bankruptcy ........................................................................................... 3
      Joseph Benkel's Appointment as Trustee .................................................................... 4
      Concerns Regarding Mr. Fishman's Disclosure of Assets .............................................. 5
      Levy Holm Pellegrino and Drath .................................................................................. 6
ARGUMENT ......................................................................................................................... 9
      Section 1782 Entitles Applicant to Discovery ............................................................. 10
      The Requested Discovery Satisfies the Statutory Requirements of Section 1782 ........... 12
      The Discretionary Intel Factors Favor Discovery ........................................................ 13
CONCLUSION ..................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
  785 F. Supp. 2d 434 (S.D.N.Y. 2011)...................................................................................11

*In re Application of Aldunate*,
  3 F.3d 54 (2d Cir. 1993)...........................................................................................................1

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
  747 F.3d 1262 (11th Cir. 2014) .............................................................................................12

*In re Application of Esses*,
  101 F.3d 873 (2d Cir. 1996)...........................................................................................1, 12

*In re Application of Hill*,
  No. M19-117(RJH), 05-CV-999996, 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ...................................................................................................................................14

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998)................................................................................10, 13, 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012)..............................................................................................11, 12

*In re Chevron Corp.*,
  749 F. Supp. 2d 141 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ................................................................11

*In re Chevron Corp.*,
  753 F. Supp. 2d 536 (D. Md. 2010) .......................................................................................12

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002)...................................................................................................12

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)...................................................................................................13

*First Am. Corp. v. Price Waterhouse LLP*
  154 F.3d 16 (2d Cir. 1998).....................................................................................................14

*In re Grupo Qumma*,
  No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005).......................................................11

*Gushlak v. Gushlak*,
 486 F. App'x 215 (2d Cir. 2012) ..............................................................................1, 10

*In re Hornbeam Corp.*,
 No. 14 Misc. 424, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015)............................1

*In re Lancaster Factoring Co. v. Mangone*,
 90 F.3d 38 (2d Cir. 1996)...........................................................................................12

*Minatec Finance S.A.R.L. v. SI Grp. Inc.*,
 No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ...........................14

*In re Promnefstroy*,
 No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ..........................13

*RTI Ltd. v. Aldi Marine Ltd.*,
 523 F. App'x 750 (2d Cir. 2013) ...............................................................................10

*Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*,
 376 F.3d 79 (2d Cir. 2004).........................................................................................11

*In re Servicio Pan Americano de Proteccion*,
 354 F. Supp. 2d 269 (S.D.N.Y. 2004).......................................................................11

*SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*,
 No. 01 CIV. 9291 (JSM), 2002 WL 1455346 (S.D.N.Y. July 3, 2002) ..................11

*In re Strand Invs. LtD.*,
 No. 09-21985, 2009 WL 2225536 (S.D. Fla July 24, 2009)....................................12

*In re Sveaas*,
 249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................11

*In re Wilhelm*,
 470 F. Supp. 2d 409 (S.D.N.Y. 2007).......................................................................11

**Statutes**

28 U.S.C. § 1782................................................................................................ *passim*

28 U.S.C. § 1782(a) ...................................................................................................10

Applicant Joseph Benkel, as Trustee, respectfully petitions this Court *ex parte*[1] for an order pursuant to 28 U.S.C. § 1782 authorizing him to take discovery, in the form of the attached subpoenas (*see* Decl. of Aurora Cassirer (the "Cassirer Decl.") at Exhibit A and B), from Respondents Levy Holm Pellegrino & Drath (the "Law Firm" or "Respondent") who are persons and/or entities found in the Southern District of New York, for use in foreign proceedings in Israel.

## **PRELIMINARY STATEMENT**

This Application stems from an insolvency proceeding filed against Eliezer Fishman in the District Court in Tel Aviv, Israel in 2016 and the Trustee's attempt to obtain information and documents about the assets and interests in assets that Mr. Fishman may have abroad.

The facts are set forth in the Declaration of Joseph Benkel, Adv. dated July 2, 2020 (the "Benkel Decl."). As set forth in such Declaration, Respondent is a law firm located in the Southern District of New York. The Law Firm, which, upon information and belief, represented Mr. Eliezer Fishman both individually and in connection with his numerous public and private entities, is in possession of files and information relating to the Bankrupt, Eliezer Fishman. This Law Firm was retained for such assignments for at least twenty years, continuing until the October 2019 death of Steven Holm—the name partner responsible for the client relationship with Mr. Fishman. The information is necessary because Mr. Fishman takes the position that the files are not his, but those of other entities, and the Law Firm, accordingly, has refused to release the files. Thus, the Trustee is constrained to make this request under 28 U.S.C. Section 1782.

---

[1] Courts in the Second Circuit routinely handle § 1782 requests on an ex parte basis. *See*, *e.g., In re Hornbeam Corp.*, No. 14 Misc. 424, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015) (collecting cases, and noting that "[d]istrict courts may and customarily do resolve applications for discovery pursuant to § 1782 through *ex parte* proceedings" and that there is "widespread recognition that § 1782 applications are properly handled *ex parte*"); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Application of Esses*, 101 F.3d 873 (2d Cir. 1996); *In re Application of Aldunate*, 3 F.3d 54 (2d Cir. 1993).

On various occasions between August 2019 and June 2020, the Trustee wrote to the Law Firm requesting access to the files and information relating to Eliezer Fishman, taking the position that the files belonged to him as trustee to the Debtor's estate, as he had stepped into the shoes of the Bankrupt, and in any event was entitled to the firm's files as he has reason to believe that Mr. Fishman has hidden assets abroad in the names of nominees or trustees. Benkel Decl., Exs. 10, 11. The Law Firm has previously admitted that it is in possession of a number of files relating to Mr. Fishman but is denying the Trustee access to such files on the basis of a letter written by the Mr. Fishman's attorney stating that although the files were under the name E. Fishman, they related to companies or to members of Mr. Fishman's family.

For the reasons set forth below, this Section 1782 Application should be granted. First, it meets the statutory requirements for a Section 1782 application because Respondents are each "found" in this District and the discovery sought is "for use" in foreign proceedings in which Applicant is an "interested person." Second, the discretionary factors that apply in determining whether to grant an application, as articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, all favor granting this Section 1782 Application.

Accordingly, Applicant respectfully requests that the Court grant its application and permit the issuance of the requested subpoena.

## **RELEVANT BACKGROUND[2]**

Discovery, both domestically and abroad, has been authorized by a court order of the District Court in Tel Aviv, Israel, and is necessary for the foreign proceeding as Mr. Fishman has been evasive with respect to his various international assets. The documents and information sought herein relate to his interests and assets in the

---

[2] Unless stated otherwise, citations in this section are drawn from declarations or filings summarizing the allegations in the various foreign proceedings at issue. *See* Cassirer Decl. Ex. A.

2

United States. By Judgment entered on October 31, 2018, the District Court in Tel Aviv stated in relevant part:

> "I hereby empower Joseph Benkel… to implement any procedures or action required in order to trace the assets and right so the bankrupt, and vesting them to the Trustee by virtue of its capacity as aforesaid, including assets and rights held by third parties,… and for which there are actual indications that such assets and rights have direct or indirect linkage to the Bankrupt, both in the State of Israel and **abroad**…."

Benkel Decl., Ex. 1.

The Respondent and subject of the discovery is a law firm in New York, Levy Holm Pellegrino and Drath , which represented Mr. Fishman and/or companies in which he had an interest for at least twenty years, and whose now-deceased partner, Steven Holm, had a personal, familial, and business relationship with the Bankrupt.

**Eliezer Fishman**

Mr. Fishman, an Israeli national and certified accountant, is an Israeli businessman, well-known for his wealth and prominence in Israeli business and media. Until four years ago, Mr. Fishman controlled more than 150 privately incorporated companies. His core business interests were in media, retail and real estate (both in Israel and abroad), but his diverse interests ultimately extended to almost every important sector of the Israeli economy. His interests were held through a complex and vast network of holding companies.

In 2013, Forbes Israel ranked Mr. Fishman as the 40th richest Israeli, estimating his net worth at NIS 2.7 billion. Mr. Fishman and his wife, Mrs. Tova Fishman, have three adult children: Mrs. Anat Menipaz, Mr. Eyal Fishman, and Mrs. Ronit Tishman-Ofir.

**Mr. Fishman's Bankruptcy**

In order to finance the construction and/or daily operation of his extensive business interests over the last three decades, Mr. Fishman's companies took on extensive loans. By 2015-

2016, Mr. Fishman had accumulated substantial unpaid debts to the Israel Tax Authority that, along with the accumulated debt of his companies, was unprecedented in Israel. So substantial, in fact, that the banks ultimately felt compelled to take firm action and filed a series of petitions to realize their security interests in Fishman's collateral.

In August 2016, the Large Enterprises Assessor Department of Income Tax of the Israel Tax Authority, by its Liquidation, Receivership and Bankruptcies Division, petitioned for Mr. Fishman's bankruptcy. Subsequently, on December 12, 2016, the Tel Aviv District Court issued a Receivership Order for Mr. Fishman's assets, and Mr. Benkel was appointed as the Special Administrator, which is equivalent to an interim trustee. As of this date, Mr. Fishman's debts, which were largely a result of personal guarantees he made on behalf of his companies' debts, amounted to approximately NIS 3.9 billion dollars (approximately USD 1.13 billion dollars). Most of which was owed to banks in Israel and to the Israel Tax Authority.

On June 21, 2017, Mr. Fishman was declared bankrupt by the Tel Aviv District Court, and Mr. Benkel was appointed as his Trustee in bankruptcy. Benkel Decl., Ex. 3.

**<u>Joseph Benkel's Appointment as Trustee</u>**

The Trustee appointment was made pursuant to the Bankruptcy Ordinance [1980] (Israel). As a matter of Israeli law, pursuant to the Bankruptcy Ordinance, all of the Bankrupt's assets and rights are vested in the Trustee in his aforesaid capacity. Pursuant to the Bankruptcy Ordinance, the Trustee also has the following powers:

   (11.1) The power to possess, trace, locate and to exercise all of the Bankrupt's rights and assets;

   (11.2) The power to apply to seize any property comprised in the Bankrupt's estate or any books, papers. records etc., relating to it, which are in possession or control of the Bankrupt;

4

(11.3) The power to investigate the Bankrupt's affairs, which includes the power to request information and documents regarding the Bankrupt, his business affairs and private interests;

(11.4) The power to summon the Bankrupt and any third parties for investigations with regard to his assets and (in the event of refusal by the Bankrupt or any third party to appear), the power to seek a court order to enforce such cooperation with my investigations.

As part of his responsibilities as the Trustee in Bankruptcy, Mr. Benkel was also appointed as liquidator of various companies owned or controlled by the Bankrupt. Benkel Decl. at ¶¶ 10-11, Ex. 3.

**Concerns Regarding Mr. Fishman's Disclosure of Assets**

The Trustee and his attorneys and investigators have engaged in extensive discovery, including what amounts to depositions of the Bankrupt, the Bankrupt's family, as well as employees of the Bankrupt. Despite the volume of information obtained, it is apparent that the Bankrupt may have substantial assets that have not yet been disclosed, likely being held through trustees or nominees, including, but not limited to, members of his family and close associates. There is also a concern that since his bankruptcy became imminent, Mr. Fishman and his associates may have taken steps to change the ownership of assets, making it even more difficult to connect those assets to the Bankrupt.

For example, an intensive cross border investigation effort undertaken by the Trustee and his investigators, in connection with the state of the Bankrupt's rights and assets, has disclosed that the Bankrupt held and holds, through a complex and complicated network of legal entities controlled by trustees, agents and proxies, operating for him and all on his behalf, assets and rights to the value of at least tens of millions of euro throughout Europe. . Moreover, according

5

to the information learned by the Trustee, the Bankrupt is continuing to conceal assets from the Trustee, and in certain cases has even attempted to monetize his assets in Germany through various trust arrangements, all of which is, of course, are contrary to his obligation under Israeli law to transfer such assets and rights to the bankruptcy estate in order to allow the Trustee to realize them for the benefit of all his creditors.

As a follow-up to the cross border inquiries which took place and the evidence gathered during the investigation, the Trustee has sought an Israeli court order to compel the Bankrupt to divulge to the Trustee all of the information relating to the interests and assets in Israel and overseas, which were held and/ or are presently being held for him and/or on his behalf, directly and/or indirectly, in any other manner, including the details as to nominees as trustees. Benkel Decl., Ex 4.

On January 23, 2020, the Israeli court denied the application on the ground that the Israeli court is not the appropriate forum for the granting of the requested relief to compel discovery abroad, and that such requests should be made in the forum where the assets are held and where judgment could be rendered and enforced. In view of the above, the Israeli court granted the Trustee the right to seek remedies in foreign courts, stating that: *"The Trustee may turn to foreign judicial instances in order to request the declaratory or operative relief he so wishes regarding the assets at the center of this application or other assets, at his discretion and to the best of his understanding"*. Benkel Decl., Ex. 5.

**Levy Holm Pellegrino and Drath**

As mentioned above, the Bankrupt is an Israeli businessman who was actively engaged in dozens of private companies. The Bankrupt was also a controlling shareholder of several publicly held Israeli companies. A number of his business interests were abroad, including several of which are located in New York. One of the Bankrupt's relatives, Mr. Steven Holm,

was a partner in the Law Firm and served as a director in some of the Fishman's companies. Mr. Holm also represented the Bankrupt in many of his U.S. transactions. The Bankrupt listed Mr. Holm as a Creditor of the Estate but has since stated that he is unable to remember the origin of the debt. Benkel Decl., Ex. 7 at ¶ 7 et seq.

By application dated October 3, 2019 the Trustee previously attempted to obtain discovery relating to the debts and relationship between the Bankrupt, Mr. Holm, and the Law Firm. Benkel Decl., Ex. 6. The Israeli Official Receiver, the equivalent of the U.S. Trustee's Office under U.S. Bankruptcy laws, joined in this request. Benkel Decl., Ex. 8. Despite a court order mandating his appearance, (Benkel Decl., Ex. 8), the Bankrupt has refused to cooperate in these discovery requests.

As part of the Trustee's duty to inquire as to the assets and debts of the Debtor, the Trustee sent a number of emails asking Mr. Holm and the Law firm for the files and the information relating to the Bankrupt. As under U.S. law, as well as under Israeli law, a Trustee steps into the shoes of the Bankrupt, and is entitled to receive the Bankrupt's files and information relating to the Bankrupts' assets with no exceptions. The Trustee's letters elicited only two cursory responses until he retained the firm of Troutman Sanders as local counsel. Both responses by Mr. Holm, made on September 10, 2019 and September 27, 2019, stated that he did not intend to file a claim with the Estate and that he and his firm had not represented the Bankrupt in the last twenty years, but that such work was instead on behalf of "the various public companies…and their subsidiaries and not on behalf of Mr. Fishman individually" and that he "did not possess any documents that would be part of the estate…". Benkel Decl., Ex. 10. Mr. Holm died of cancer shortly thereafter, before the Trustee had an opportunity to ask him any further questions.

On December 18, 2019, one of the Trustee's attorneys sent an email to two other partners of the Law Firm, requesting them to send all the client files and certain other documents in the Law Firm's possession that relate to the assets of the Bankrupt. The email also explained that no applicable privilege concerns prevented the Law Firm from producing these documents. On December 26, 2019, another email was sent to the Law Firm partners, which, again, received no response. Benkel Decl., Ex. 11.

On or about June 8, 2020, Mr. Ted Metzger, a partner of the Law Firm who introduced himself as one of the Law Firm's representatives, finally responded to the Trustee's U.S attorney and produced a copy of an email chain, which included emails and a letter from a Mr. Shalom Goldblatt. Mr. Shalom is an Israeli attorney who represents the Bankrupt and his close family members in dozens of proceedings initiated by the Trustee as part of the Israeli bankruptcy proceedings (in which, the Bankrupt and his close family members have continuously attempted to undermine the Trustee and his efforts to retrieve assets and rights to the Bankrupt's estate. Benkel Decl., Ex. 12. Included in the chain is an email dated May 27, 2020 from Mr. Metzger to Mr. Goldblatt, which states in relevant part, "Please confirm that you will prepare and send a letter to our firm no later than this weekend either raising no objection to our releasing files in our possession regarding Mr. Fishman (list previously provided) or objecting to specific file releases…" The chain also contained an email dated May 31, 2020, stating that "the attorney for the Israeli bankruptcy estate for Eliezer Fishman, is insisting, **with some justification** that we release the files in our possession to them for examination. Unless you present us with justification for not releasing the files in our possession, we will have no choice but to do so." (Emphasis added).

Mr. Goldblatt's response to the Law Firm, copying various other persons, claimed that the list of files, which had been identified by the Law Firm as "E. Fishman files", belonged largely to the companies in which the Bankrupt previously held an interest, with some files belonging to a company held by his children, and one file belonging to the Bankrupt's wife. There were also files whose contents Mr. Goldblatt was unaware of. Based on this letter, the Law Firm is currently refusing the Trustee access to the files.

## **ARGUMENT**

It is clear that Mr. Goldblatt has no standing and no basis to object to the production. Clearly, the list annexed to the Goldblatt letter indicates that the files were set up under the client name, E. Fishman, and that the Law Firm, in making the inquiry to Mr. Goldblatt, Mr. Fishman's bankruptcy attorney, believed that the Bankrupt was its client and that it possessed information which the Trustee needed. If there is any merit to Mr. Goldblatt's claim that the Bankrupt was not represented by the Law Firm, he has no standing to object to the disclosure of the files. And in the one month since his letter copying the purported "real parties," was sent, no one has objected to the disclosure.

Moreover, there is no merit to any claim that the files are not relevant and should not be produced. The Bankrupt has a pattern of co-mingling assets and debts with the assets and debts of the companies in which he had an interest. Benkel Decl., Ex. 4. Accordingly, these files are clearly relevant as they contain information with respect to the Bankrupt's rights or interests in assets held in various legal entities and should be produced. Such files and such information clearly belong in the Trustee's possession and control.

A copy of the proposed subpoena which the Trustee intends to serve upon the Law Firm is annexed as Exhibit A to the Cassirer Declaration, dated July 2, 2020. It is designed narrowly to conform to the list identified and to the designation of the files by the Law Firm itself, as well as

9

to understand the relationship between Fishman Holdings North America, Inc, which was housed on the Law Firm's premises for a number of years, even sharing a phone number with it, the Bankrupt, and the Law Firm. The Court should grant this Application and permit the issuance of the requested subpoena, as allowed under 28 U.S.C. § 1782.

**Section 1782 Entitles Applicant to Discovery**

28 U.S.C. § 1782 empowers a district court to order discovery in the United States for use in a foreign tribunal. Section 1782 contains "modest prima facie elements" consistent with "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Applicant here easily satisfies the requirements of Section 1782.

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). Congress enacted Section 1782 to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (citation and quotations omitted). Pursuant to Section 1782, " 'any interested person' " may apply to a district court for an order permitting him or her to take discovery " 'for use' " in a foreign proceeding. *See RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 751 (2d Cir. 2013) (quoting 28 U.S.C. § 1782(a)).

The statutory requirements to obtain discovery under Section 1782 are simple and few: "a district court is authorized to grant a Section 1782 application where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the

application is made by a foreign or international tribunal or 'any interested person.' " *In re Chevron Corp.*, 749 F. Supp. 2d 141, 160 (S.D.N.Y. 2010) (citation omitted), *aff'd sub nom., Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

"Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83-84 (2d Cir. 2004) (citation and quotation omitted). The Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.,* identified four factors a district court may consider in determining whether to grant a Section 1782 Application: (1) whether the respondent from whom discovery is sought is a "participant in the foreign proceeding"; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the Section 1782 request is an attempt to "circumvent foreign proof-gathering restrictions"; and (4) whether the discovery sought is "unduly intrusive or burdensome." 542 U.S. 241, 264-65 (2004); *see also In re Chevron*, 749 F.Supp.2d at 160.

Courts in this District routinely grant Section 1782 applications based on the satisfaction of these statutory and discretionary factors. *See e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,* 785 F. Supp. 2d 434 (S.D.N.Y. 2011) (Rakoff, J.); *In re Sveaas,* 249 F.R.D. 96 (S.D.N.Y. 2008); *In re Wilhelm*, 470 F. Supp. 2d 409 (S.D.N.Y. 2007); *In re Grupo Qumma*, No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005); *In re Servicio Pan Americano de Proteccion,* 354 F. Supp. 2d 269 (S.D.N.Y. 2004); *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC,* No. 01 CIV. 9291 (JSM), 2002 WL 1455346 (S.D.N.Y. July 3, 2002).

These cases apply with full force here. As demonstrated below, Applicant's 1782 Application satisfies the statutory and discretionary factors.

**The Requested Discovery Satisfies the Statutory Requirements of Section 1782**

The three statutory requirements for obtaining discovery under Section 1782 are easily met here:

1. *Respondent from whom discovery is sought is found in this District.* The Law Firm is located in the Southern District of New York at 950 Third Avenue, New York, NY 10022. Thus, Applicant satisfies the first statutory requirement. *See Brandi-Dohrn*, 673 F.3d at 80; *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding* (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014) ("[T]he application seeks discovery from JAS USA, which has an office and does business in Miami and is therefore found in the district of the district court ruling on the application for assistance . . . ."); *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) (holding that a person is "found" within a district where that person "is served with a subpoena while physically present in the district").

2. *The discovery requested is for use in a foreign proceeding.* This Application stems from an insolvency proceeding filed against Eliezer Fishman in the District Court in Tel Aviv, Israel in 2016. The discovery sought herein will be used in connection with this insolvency proceeding.

3. *The Trustee is an interested party.* Applicant is an "interested person" for purposes of Section 1782 because Applicant is the Trustee in the Bankruptcy proceedings of Mr. Eliezer Fishman, about whom the information is being sought, and who is at the core of the pending foreign proceedings. *See In re Esses*, 101 F.3d at 875. Parties to the foreign proceedings necessarily are "interested persons".." .*See also In re Lancaster Factoring Co. v. Mangone, 90 F.3d 38, 42 (2d Cir. 1996); see also In re Chevron Corp., 753 F. Supp. 2d 536, 539 (D. Md. 2010); In re Strand Invs. Ltd.,* No. 09-21985, 2009 WL 2225536, at *1 (S.D. Fla. July 24, 2009).

Applicant has clearly met the statutory prerequisites under Section 1782.

**The Discretionary Intel Factors Favor Discovery**

1. *The Law Firm is not a party to the Israeli proceedings.* The Law Firm is located in New York and is not a party to the insolvency proceedings occurring in Israel. The discovery sought is also located in this Judicial District, not in Israel. Therefore, this is not a situation where "[a] foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. The first *Intel* factor weighs in Applicant's favor.

2. *The Foreign Tribunal is receptive to federal court assistance under Section 1782.* "Receptivity" is not a question of whether the foreign court would permit discovery in this or any other particular case; instead, it is an inquiry into whether a foreign legal system would "reject evidence obtained with the aid of section 1782." *In re Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009); *see also In re Bayer AG,* 146 F.3d at 196; *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1100 (2d Cir. 1995). To show lack of receptivity, the opposing party has the burden of providing "authoritative proof" that the foreign tribunal would reject the evidence sought under Section 1782. *Id.*

The Israeli Bankruptcy Court has authorized and even directed the Trustee, who has been charged with marshalling the Debtor's assets, to pursue discovery abroad. Benkel Decl., Ex. 1 and Ex. 5. Thus, it is clear that the foreign tribunal would be receptive and welcoming of such information.

3. *Applicant seeks discovery in good faith.* The third discretionary *Intel* factor—whether the applicant is attempting to "circumvent foreign proof-gathering restrictions"—is meant merely to preclude bad faith abuse of process. Applicant's request is a good faith effort to obtain otherwise unavailable evidence and is not an attempt to circumvent foreign proof-gathering restrictions or other policies. Applicant thus has a good faith basis for seeking this discovery.

*See In re Application of Hill*, No. M19-117(RJH), 05CV999996, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Moreover, it appears that [petitioner] is seeking this discovery because it has a good faith basis for believing that it will be able to use the . . . documents in the Hong Kong litigation."). Accordingly, this factor weighs in favor of granting the Application.

*4. The requested discovery is neither unduly burdensome nor intrusive.* The requested document discovery and testimony would provide information about Mr. Fishman's assets, debts, and business dealings, and therefore concerns "the precise subject matter of the underlying [proceedings]." *First Am. Corp. v. Price Waterhouse* LLP, 154 F.3d 16, 23 (2d Cir. 1998). The Application is "specifically and narrowly tailored" to such subject matter. *See Minatec Finance S.A.R.L. v. SI Grp. Inc.,* No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). "Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG,* 146 F.3d 188, 195 (3d Cir. 1998). However, "because the Court is called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions, the court should be particularly wary of denying discovery on relevance grounds." Here, Applicant only seeks relevant discovery from the Law Firm. Thus, the fourth *Intel* factor weighs in favor of the Court granting this Application.

Accordingly, each of the four *Intel* factors weighs in favor of granting this Application. As such, Applicant respectfully request that the Court grant this Application.

## **CONCLUSION**

Based on the foregoing, Applicant respectfully requests that the Court issue an Order substantially similar to Exhibits A and B attached to the Declaration of Aurora Cassirer dated July 2, 2020.

Dated: New York, New York
July 2, 2020

                                  TROUTMAN PEPPER HAMILTON
                                  SANDERS LLP

                                  By: *s/ Aurora Cassirer*
                                        Aurora Cassirer

                                  875 Third Avenue
                                  New York, New York 10022
                                  (212) 450-4000

                                  *Attorneys for Joseph Benkel, Trustee for the Assets of the Bankrupt, Mr. Eliezer Fishman, I.D. No. 03030265*